IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.   05-cv-00851-LTB-CBS

ICG TELECOM GROUP, INC.,

    Plaintiff,

v.

QWEST CORPORATION,

    Defendant.

_____

ORDER
_____

    ICG Telecom Group, Inc. ("ICG") filed this action to compel Qwest Corporation ("Qwest") to arbitrate a dispute that arises between them out of their Interconnection Agreement ("Agreement"), by which their commercial dealings are governed.  On March 14, 2005, ICG filed a demand for arbitration with the American Arbitration Association ("AAA").  On April 11, 2005, Qwest, refusing to submit to arbitration as the Agreement provides, filed an accelerated complaint against ICG with the Colorado Public Utilities Commission ("PUC").  On May 10, 2005, after a hearing, I granted ICG's motion for a temporary order restraining the PUC from conducting further proceedings.  On May 17, 2005, Qwest withdrew its motion to stay or dismiss the AAA proceedings and filed a motion to dismiss voluntarily and without prejudice the PUC proceeding. On June 9, 2005, an administrative law judge of the PUC granted Qwest's motion and dismissed the accelerated complaint.

    ICG claims entitlement to the attorney fees that it incurred here compelling arbitration.  It

cites Section (A)3.17.4 of the Agreement, which provides,

> Should it become necessary to resort to court proceedings to enforce a Party's compliance with the dispute resolution process set forth herein, and the court directs or otherwise requires compliance herewith, then all of the costs and expenses, including its reasonable attorney fees, incurred by the Party requesting such enforcement shall be reimbursed by the non-complying Party to the requesting Party.

Qwest, now acquainted with the advantages of arbitration, argues that the attorney fee issue is not properly before me but rather should be submitted to the arbitrator. It moves for an order compelling arbitration of the fee issue. It points to Section (A)3.17.1, which provides that if "any claim, controversy or dispute between the Parties... should arise, and the Parties do not resolve it in the ordinary course of their dealings," then the matter shall be resolved according to "the dispute resolution procedures set forth in" Section (A)3.17 of the Agreement. It interprets this clause to mean that the dispute over fees must be submitted either to the AAA or to the PUC.

Qwest's argument begs two questions that Qwest does not attempt to answer. First, it is unclear why the attorney fee issue constitutes a dispute for the purposes of Section (A)3.17.1. Qwest does not, and cannot, dispute that ICG is entitled to recover its attorney fees. As set forth below, Qwest merely disputes the amount of the fees to which ICG is entitled. On Qwest's reading, therefore, I might properly announce ICG's entitlement to reasonable fees but not determine the amount of those fees. Why Qwest should thus be enabled to bifurcate the issue by conditioning its agreement with ICG is far from obvious. In fact, the disagreement over attorney fees is not a "dispute" within the meaning of Section (A)3.17.1. It did not arise in the ordinary course of the parties' dealings, as Section (A)3.17.1 specifies, but rather within a proceeding pursuant to Section (A)3.17.4.

Second, Qwest does not bother to explain why a determination by this Court of the fee issue is not a dispute resolution procedure contemplated in Section (A)3.17. Section (A)3.17.1

does not provide that any disagreement between the parties must be resolved either in arbitration or in a PUC proceeding.  Rather, I am left to determine what constitutes a "dispute resolution process set forth in" Section (A)3.17, which includes Section (A)3.17.4.  Indeed, Qwest has assumed its own answer to the very question I must resolve: whether Section (A)3.17.4 provides for resolution of the fee issue in this Court or in arbitration.

Though Section (A)3.17 does not explicitly state who is authorized to award attorney fees, a straightforward reading of the provision commends ICG's view.  The provision requiring Qwest to pay ICG's attorney fees appears in the same paragraph as that which permitted ICG to enforce the arbitration provision in this Court.  ICG and Qwest bargained for enforcement of the arbitration provision and enforcement of the attorney fee clause together and so both provisions come within the purview of this proceeding.  *United States v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987).  I will therefore enforce the Agreement according to its terms.  *Id*.

Qwest has cited numerous cases standing for the proposition that a court authorized to enforce an arbitration provision must do so and must not weigh the merits or equities of the underlying arbitrable claims.  *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567-568, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *National R. R. Passenger Corp. v. Missouri Pac. R. Co.*, 501 F.2d 423, 427 (8th Cir. 1974); *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-695 (8th Cir. 1994); *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 726 (8th Cir. 2003), *cert. denied*, 540 U.S. 1149, 124 S. Ct. 1147, 157 L. Ed. 2d 1042 (2004).  Those cases do not contain the additional proposition, as Qwest would have me hold, that my review of the arbitration question excludes the award of an attorney fee for which the parties here bargained.

Qwest questions the reasonableness of ICG's fee request and carefully scrutinizes pursuant to the standards of *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983) the hours ICG has reported. The strict scrutiny of *Ramos* is not appropriate here. My review of the fee award to ICG, unlike an award under a federal fee-shifting statute, is only to determine whether the claimed fees are inequitable or unreasonable. *United States v. Expert Environmental Control, Inc.*, 790 F. Supp. 250, 251 (D. Colo. 1992). If so, I may deny or reduce the fee award. *Id*. However, I am not responsible for independently calculating a reasonable fee. *Id*.

I agree with Qwest that a portion of ICG's fee request of $152,354.50 is inequitable. ICG is entitled to recover the fees expended enforcing the arbitration agreement in this forum but not before the AAA or the PUC. Though ICG did not act unreasonably in seeking enforcement here as a last resort, its expenditures before the AAA and PUC do not come within Section (A)3.17.4, which ties an award of fees to enforcement by resort to court proceedings. Thus, $9,074 must be deducted from the requested award.

I do not find persuasive Qwest's argument that ICG spent a disproportionate amount of time litigating the arbitrability question before me. According to the affidavit and calculations of Qwest's expert, Sheldon Friedman, out of 354.6 total hours expended on the arbitrability issue, ICG's counsel spent only 31.8 pursuing maintenance of the AAA action and dismissal of the PUC action. The balance was spent litigating here. However, Qwest raised here the question of my jurisdiction to enforce the arbitration clause, a delicate issue that did not appear in the proceedings before the AAA or the PUC. ICG's billing records reflect the complexity of the issues litigated here.

I reject Qwest's argument that fees ICG incurred after May 17, 2005, when Qwest moved to dismiss the PUC proceeding, should be disallowed. Qwest continued to challenge this Court's

jurisdiction and ICG's entitlement to fees after that date. ICG cannot fairly be punished for responding to the issues that Qwest raised.

ICG is entitled to recover the fees it expended seeking recovery of its fees; though Qwest did not engage in scorched-earth tactics in litigating the fee issue, *contrast Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir.1988), ICG's expenditures were not unreasonable or inequitable given the parties' considerable disagreement on the question. *Expert Environmental Control*, 790 F. Supp. at 251; *Iqbal v. Golf Course Superintendents Ass'n of America*, 900 F.2d 227, 229-230 (10th Cir. 1990). ICG is also entitled to its expenditures, as the Agreement explicitly provides.

Accordingly, it is ORDERED that

1) ICG is awarded its attorney fees in the amount of $143,280.50 and expenditures in the amount of $17,998.41; and

2) Qwest's motion to compel arbitration of the attorney fee issue is DENIED.

Dated: August 18, 2005, in Denver, Colorado.

                                      BY THE COURT:

                                      s/Lewis T. Babcock
                                      Lewis T. Babcock, Chief Judge